JUSTICE WARNER
concurs.
¶36 Although I concur in the Court’s opinion, I wish to further address several issues. I present the following scenario:
Mary Smith: Mr. Jones, I’m calling because I was just served with a subpoena. Am I supposed to testify against my husband in the spousal abuse trial?
Prosecutor Jones: Yes, that’s right Mary. The trial starts Monday morning at 8:00 a.m. at the courthouse. I’ll be asking you to tell the jury how Harry beat you last October when he came home drank from the football game.
Mary Smith: Look. I’ve been thinking it over, and I’ve decided I don’t want to testify. Harry told me that he’s not going to prison because of me. Then, last night Harry and a couple of his friends got me alone and told me that if I testify one of them will break my legs. They also said that if I even show up at the courthouse they will take my daughter and she won’t be worth much when she comes back. I know these guys, and I believe them - they’ll do it. I’m scared. I’m not coming to testify and I just thought I’d let you know so you can call off the trial.
Prosecutor Jones: I can’t do that Mary. This is Harry’s third spousal abuse offense. We’re going to prosecute. You’ve got a subpoena and you’re required to be there. It’s a court order and you can be held in contempt if you don’t show up.
Mary Smith: I’m telling you I’m not going to testify. I don’t particularly care about some stupid court order. I won’t be there, so forget the whole thing.
Prosecutor Jones: But Mary, without your testimony we can’t convict Harry. Our State Supreme Court has told us that we need your testimony. We cannot use your statements to your neighbor Ginny after the fight, and we can’t use your statements when you called 911. For sure we can’t have Officer Brown testify about what you told him when he got there, and the ER doctor can’t testify about what you told him either. I can’t even prove to the Court that Harry and his friends really threatened you unless you show up. You’ve got to come, we can protect you; and if you don’t come I’ll have to have you arrested.
Mary Smith: Harry told me that’s what you would say. But, he’s right that you can’t protect me 24 hours a day for years, and I’m not going to let Harry’s friends at my daughter. I’m out of town *318 now, you’ll never find me, and I don’t care what you threaten me with - I’m not coming. Bye. [Click.]
¶37 This colloquy is, of course, the counter-point to the thoughtful dissent with which I must disagree.[1] The dissent’s historical analysis of the right of a defendant in a criminal case is instructive, and points to problems that must be faced in modern criminal prosecutions. In my view, however, it ignores the interests of the victim; takes too cynical, and dangerous, of an approach to our system of criminal justice; and misinterprets Crawford.
¶38 The dissent fails to give sufficient consideration to the interests of witnesses and victims. The Court recognizes the critical importance of the Confrontation Clause. However, as the dialogue I have presented above illustrates, an accused must not be allowed to hide behind the Constitution by intimidating witnesses. It would be naive to assume that defendants would not do so, if given the opportunity. It takes little imagination to picture the jungle of fear that would be created if the rationale that is proposed by the dissent is adopted. In my view it would become intolerably more dangerous to be the victim of an offense, or to be a witness in any criminal case, if the Confrontation Clause is interpreted to mean that prosecutions cannot be maintained if witnesses, for whatever reason, do not appear at trial, which is what the dissent seems to advocate.[2] See Tom Lininger, Prosecuting Batterers After Crawford, 91 Va. L. Rev. 747, 750 (2005) (65% of prosecutors surveyed in California, Oregon, and Washington “reported that victims of domestic violence are less safe in their jurisdictions than during the *319 era preceding the Crawford decision.”).
¶39 I also disagree with the dissent’s premise that government officers will run amok in their zeal to unfairly obtain convictions. In our justice system, prosecuting attorneys, and impliedly all law enforcement personnel, occupy a position of public trust. Courts, citizens and even criminal defendants must rely on these public servants to be honorable advocates both for the community on whose behalf they litigate and for the justice system of which they are an integral part.
¶40 It cannot be gainsaid that it is possible for unscrupulous prosecutors or other government officials to cheat, connive, and abuse the system to unfairly obtain a conviction. Indeed, it was the intent of the Framers to limit the discretion of these individuals. See Crawford, 541 U.S. at 67, 124 S.Ct. at 1373, 158 L.Ed. at 202-203. However, I do not presume, as the dissent seems to, that prosecutors inevitably abuse their offices, violate their oaths to uphold the Constitution, and connive to manufacture evidence so that a complaining witness need not appear at trial. Such general accusations undermine public confidence and bring into question our entire system of justice. There are implicit checks on prosecutors and government officials imposed by the elective system, the legislature, the bar, and the courts. Such is evident in this Court’s decision today, providing protection for defendants against testimonial hearsay.
¶41 It is clear that only those out of court statements that are testimonial in nature are the “primary objective” of the Confrontation Clause. Crawford, 541 U.S. at 53,124 S.Ct. at 1365, 158 L.Ed. at 194. Until the Supreme Court expressly rules otherwise, we should continue to apply the precedent left in place. Robert P. Mosteller, Crawford v. Washington: Encouraging and Ensuring the Confrontation of Witnesses, 39 U. Rich. L. Rev. 511, 619 (2005) (“lower courts should still apply the ‘old system’ to non-testimonial hearsay because Crawford did not overrule Roberts in this area.”). As Professor Friedman, whose scholarly work influenced the Crawford majority, notes, “[I]f the statement is not testimonial, so that the declarant should not be deemed to have been acting as a witness in making it, the [Confrontation] Clause should not bar its admissibility, even if the statement does not seem reliable.”[3] No matter how the dissent spins the language of Crawford, the decision does not broaden Confrontation Clause scrutiny to encompass nontestimonial statements. Thus the dissent is incorrect to go as far as *320 to assume “that the right of confrontation applies to both testimonial and nontestimonial statements[,]” and that the Roberts analysis has been rendered inapplicable. Nontestimonial statements should be admitted under the Roberts standard, which is most often met by a “firmly rooted” hearsay exception.[4] The rules of evidence, properly interpreted, provide sufficient guarantees of fairness. Contrary to the dissent’s assertion, firmly rooted exceptions, like that for excited utterances, are still valid law.
¶42 Prosecutors are still required to prove their case beyond a reasonable doubt. The difficulty of gaining a conviction increases significantly where the prosecution’s case relies primarily upon out of court statements. Experience shows that jurors simply give less weight to hearsay. John G. Douglass, Confronting the Reluctant Accomplice, 101 Colum. L. Rev. 1797, 1839, n.180 (2001) (“[J]urors exposed to hearsay will know that they are receiving secondhand goods.”); Richard F. Rakos & Stephan Landsman, Researching the Hearsay Rule: Emerging Findings, General Issues, and Future Directions, 76 Minn. L. Rev. 655, 656-658 (1992); Crawford, 541 U.S. at 70,124 S.Ct. at 1375, 158 L.Ed. at 204, n.l.
¶43 The Court’s opinion today provides for fair trials of the accused while giving consideration to victims and witnesses. Conversely, the dissent’s objective of protecting the accused to the utmost extent, while perhaps well intentioned, fails to adequately consider how such an interpretation of the Confrontation Clause would impede our pursuit of truth and justice in an imperfect world.

 The foregoing dialogue is not fanciful. Some research has shown that approximately 80% of victims decline to assist the government in prosecutions of domestic violence cases. Tom Lininger, Prosecuting Batterers After Crawford, 91 Va. L. Rev. 747, 768-769 (2005) (“The reasons why victims refuse to cooperate with the prosecution are manifold, but chief among them is the risk of reprisals by the batterers. One study found that batterers threaten retaliatory violence in as many as half of all cases, and 30 percent of batterers actually assault their victims again during the predisposition phase of prosecution.”).

 As a potential safeguard the Crawford majority noted the rule of forfeiture by wrongdoing. Crawford, 541 U.S. at 62, 124 S.Ct. at 1370, 158 L.Ed. at 199. This was codified in FRE 804(b)(6), which admits hearsay “offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the witness.” Application of Rule 804(b)(6) is complicated. See U.S. v. Dhinsa (2nd Cir. 2001), 243 F.3d 635,653-654. It has been adopted by only a few states, and has not been adopted in Montana. However, because Crawford has heightened the importance of five testimony, and therefore increased the probability that the accused will threaten potential witnesses, FRE 804(b)(6) may now see increased application in the federal courts, with respect to testimonial hearsay. Lininger, 91 Va. L. Rev. at 808-810.

 Richard D. Friedman, Confrontation: The Search For Basic Principals, 86 Geo. L. J. 1011,1029 (1998).

 See Mosteller, 39 U. Rich. L. Rev. at 618 (“Resolving Roberts’s future will not have an impact on the outcome of many cases since the Confrontation Clause was generally easily satisfied under the Roberts test as to most admissible hearsay, and indeed, admissibility under Roberts’s reliability and trustworthiness analysis was most often decided automatically when the statement met a broadly accepted and long established -‘firmly rooted’- hearsay exception.”).